*LIVINGSTON* vs. *CORNELL.*

FALL 1812.
I. District.

*By the Court.* This is a motion for a new trial. The facts, in the case, are as follows :

THE plaintiff, having unsuccessfully represented the defendant in a suit on an embargo bond, the penalty of which was the sum of fifteen thousand dollars, proposed to prosecute a writ of error in the supreme court of the United States, if the defendant would allow him, in case of success, ten per cent. or fifteen hundred dollars, and advance one half of that sum for his travelling expences to the city of Washington. The defendant declined to make any advance, but manifested an intention to accept the offer, if the advance was dispensed with ; the plaintiff insisting thereon, no contract was made, and a gentleman in the city of Washington was written to, a fee of two hundred dollars was transmitted to him, and he undertook to attend to the suit, expressing his hope that, in case of success in it and two other suits, which were committed to him at the same time, an addition of one thousand dollars to his fee would not be deemed too great. Some time after the plaintiff went to the United States, to attend to his own concerns ; and finding that he would likely be detained there till the conclusion of them, wrote to the surety of the defendant in the writ of error,

Attorney and counsellor cannot recover against his client, on a *special* contract. Bargain of *no purchase no pay*, or for part of the thing sued, iniquitous.

M M

FALL 1812.
I. District.

LIVINGSTON
vs.
CORNELL.

that " he should, of course, attend to the suit," and that " in case of success, he should expect " the allowance of ten per cent. from which should " be deducted the sum advanced to Mr. K. " ($ 200) *and take upon himself all other charges,* " *and if he did not succeed, he would make no* " *other charge.*" He desired the surety to communicate the letter to the defendant. On this being done, the defendant answered, " *Hang it—* " *let him go: he has been well enough paid :*" referring to a sum of five or six hundred dollars, received by the plaintiff for his services in the court below. The surety did not communicate this reply to the plaintiff. About five months after this application, the suit came on in the supreme court, the plaintiff attended, and the judgment was reversed.

THE plaintiff brought the present suit, stating that " the defendant was indebted to him in the " sum of thirteen hundred and fifty dollars for his " services, as an attorney and counsellor of the su- " preme court of the United States, in prosecut- " ing a writ of error for him, &c. and for divers " sums of money, laid out and expended, &c."

THE jury found a verdict for the plaintiff.

IF this verdict be set aside, it must be because it is *contrary to evidence* or *contrary to law.*

WHETHER the defendant gave his assent to the offer of the plaintiff, is a question which the plaintiff contended the jury ought to infer, from the expressions of the defendant, *Let him go on*—or from his silence, and suffering the plaintiff to proceed, without informing him of his dissent. Whatever may be the opinion of the judges on this point, it is believed that the question was properly of the cognizance of the jury, and the court can not say that they were *without evidence*, or decided *contrary* thereto.

IF the verdict be *contrary to law*, it is because the contract laid in the petition, and proven to the jury, is one for which *the law gives* NO ACTION.

THE question which, therefore, presents itself for the solution of the court, is—

> DOES the law give an action to an attorney and counsellor, prosecuting a writ of error, on a contract to take upon himself all charges that will accrue, for one tenth part, or ten per cent. on the sum in dispute, in case of success; engaging that if he does not succeed he will make no other charge?

THE French, the Spanish, the English, and the Americans, have drawn those principles of their jurisprudence, by which this question is to be regulated, from the Roman law.

FALL  1812.
I. District.

LIVINGSTON
*vs.*
CORNELL.

FALL 1812.
I. District.

LIVINGSTON
*vs.*
CORNELL.

AT Rome, advocates were not allowed to make *any contract*, with their clients. Let the advocate, says the code, make no contract with the suitor, who gives him his confidence : let him make no convention. *Nullum cum eo litigatore, contractum, quem in propriam recipit fidem, ineat advocatus : Nullam conferat pactionem. Cod. lib.* 2, *tit.* 6, *l.* 6, *s.* 2.

No convention, nor contract, about the suit or his reward. *Nullum neque pactum, neque contractum de lite aut mercede. Synopsi. Bas.* 1, *cap.* 18.

BUT above all, the Roman law reprobated conventions, by which advocates stipulated to receive *part of the thing in dispute.* An attorney, or counsellor, says *Gothofred,* may well advance his money, to carry on his client's suit, and stipulate that he will receive it back with lawful interest. Such a stipulation is honest and lawful : but if he stipulate to receive one half of the thing in dispute, this will be deemed an *iniquitous* bargain. This convention for a part of the thing in dispute, is *unjust. Quod si partem dimidiam ejus quod ex eâ lite fuerit,* PACTUM INIQUUM *censebitur. Pactum hoc de quota litis injustum. Digest, lib.* 2, *tit.* 14, *l.* 53, *n.* 25, 26. 27.

IT is unlawful to make a bargain for a part of the thing in suit. *Villainous* are stipulations of this kind. *De quota litis pacisci non licet : sunt*

*enim consceleratæ hujusmodi pactiones. L.* 1,
*Cod. Theo.*

THE remuneration of the advocate could not be fixed by any agreement, nor sued for in any ordinary action. *Nullâ potest definiri conventione, nullâ ordinariâ actione peti. Ad leg. Si quis advocatorum. Cod. de postulando.*

*Honoraire,* says Ferriere, is what is given to those, the honor of whose profession does not allow them to receive a salary, as advocates and physicians. It is called *honoraire,* because it is *honest* to receive it, but *shameful* to demand it. It cannot be fixed by any convention : it cannot be sued for in any action. *Dict. de Droit, verbo Honoraire.*

ANY convention, which an advocate would make before hand, would be considered as *exaction* on his part, as *weakness* on that of the client. The suitor would give all his property to the advocate, as the sick man to the physician. *Id. Verbo Avocat.*

IT is not lawful, therefore, for a lawyer to make any bargain *de quota litis.* This kind of precaution, against the ingratitude of the client, has always been considered as sordid. *Id.*

ONE does not see an advocate plead for his honorary. The disposition of the Roman law, which denied to advocates any action for their honoraries,

has been adopted by an arrest of the parliament of Paris. *Id.*

MANY instances are to be found in the old French law books, of advocates bringing suits for their fees, and recovering on them; but this has long ago fallen into diste. In the contest, in 1775, between Mr. Linguet and the order of advocates, one of the charges against him was, that he had written to the Duke d'Aiguillon to demand his fees, and threatened him with an action for them; and that his demand upon the Duke had been referred to arbitration. 7 *Journal Historique du Rétablissement de la Magistrature.* 290.

IN England the fees of counsel are *honorary*, in the strict acceptation of the word.

OTHERWISE, says Lord Coke, of a counsellor at law, for he cannot bring any action. For he is not compellable to be a counsellor, and his fee is *honorarium*, not a debt. 1 *Instit.* 295, *a.*

A COUNSELLOR brought a bill for fees due him by a solicitor; the defendant demurred, the demurrer was allowed, and the bill dismissed. *Moor* vs. *Row. Ch. Rep.* 38.

THE fee of a counsellor is a gift of such a nature, that the able client may not neglect to give it without ingratitude. For it is but a gratuity or taking of thankfulness: yet the worthy counsellor may not demand it, without doing wrong

to his reputation, according to that moral rule :
*Multa honeste accipi possunt, quæ tamen peti non
possunt. Sir Jno. Davis's preface to his report.*
22, 23.

No action lies for a counsellor's or physician's
fees, they being given as a mere gratuity. 1 *Ba-
con Abr. 5.*

It is established with us, says Blackstone, that
a counsel can maintain *no action for his fees,*
which are given, not as a *locatio vel conductio,* but
as *quiddam honorarium :* not as a salary or hire,
but as a mere gratuity, which a counsellor cannot
demand without doing wrong to his reputation. 3
*Comm* 28.

Neither is an action sustainable, in England,
even in a court of equity. In the case of *Thorn-
hill* vs. *Evans,* Lord Hardwicke expressed great
surprise that it could be imagined that a counsel-
lor might demand his fees in a court of equity.
*Can it be thought,* said the chancellor, *that this
court will suffer a gentleman of the bar to main-
tain an action for his fees, which is quiddam ho-
norarium ?* 2 *Atkins,* 331.

An attorney cannot carry on a cause for ano-
ther, at his own expence, with a promise that he
never will expect a repayment, unless he carries the
cause : or, *upon no purchase no pay. Wood's Inst.*
413.

FALL 1812.
I. District.

LIVINGSTON
vs.
CORNELL.

IN the case of *Chesley* vs. *Beliot*, the plaintiff, who was a physician, brought his action for fees, for attending, for a considerable time, on the defendant's testator. He obtained a verdict, and the defendant procured a rule to shew cause, why the verdict should not be set aside, on the ground that *no action laid for a physician, any more than a* BARRISTER's *fees.*

THE plaintiff's counsel, *admitting this position as far it concerns barristers,* contended that it never had been determined, nor were there any authority in the books, for putting the claim of a physician's fees, upon the same footing as those of a barrister. He admitted that, as to the latter, it might have been proper that no temptation should be held out to countenance injustice, that the regulation, as to counsel, was founded *on grounds of public policy,* which were totally applicable to the case of a physician. The verdict was set aside. 4 *T. R.* 317.

NUMEROUS as are the volumes of reports of cases, determined in the courts of these states, those within our reach afford but one single instance, which it is useful to consider. It is the case of *Brackenridge* vs. *M'Farlane. Addison,* 49. The court there recognised the principle that counsellors are not entitled to any action for their fees. But they added that, as in Pennsylvania, the same gentleman was employed as an attorney

and counsellor, and his services in either of those <span>FALL 1812.<br>I. District.</span> branches could not be distinguished from those in the other, a recovery might be had *for the value of* <span>LIVINGSTON<br>*vs.*<br>CORNELL.</span> *the services.*

IN the other states, the codes or reports of which we are able to have access to, it appears the distinction between an attorney and counsellor seldom prevails. In several of them a tariff exists, regulating the fees of the profession. In others, a gross sum is fixed as the only legal compensation, the practiser can receive or demand. In many, as in this, a gross sum is fixed, not as the measure of the lawyer's claim, but as that of the victorious party against his opponent, in remuneration of what he has paid for the services of his lawyers.

AN act of our legislature, 1808, *ch.* 30, directs that any attorney of the superior court, " who " makes a bargain or agreement, with a plaintiff " or defendant, *dependent on the event of any* " *suit, to receive any portion or part of the land,* " *or any other property, that may be in dispute,* " or sued for, as a compensation for the services " of any attorney or counsellor at law, shall be for- " ever disabled, &c. and the said bargain or agree- " ment is hereby declared *null and void* to all in- " tents and purposes." *Sect.* 4.

WE consider this act, not as making any thing unlawful which was lawful before; but declaratory, in the description of the fact, and in the avoidance

N N

LIVINGSTON
vs.
CORNELL.

of the contract, of the law, as it stood before its passage; and enforcing obedience, by annexing to it, *as of course*, a penalty which the court might before in their discretion, but which they must now peremptorily, pronounce, whenever the case happens.

We think that *money* is to be considered as included in the word property in the above act. Most men consider money as the best kind of property; and the temptation to obtain the half, or any other part of a sum of money, is equally as powerful as that of obtaining a part of a tract of land, or any other article of property.

NEITHER do we think that the legislature made any alteration in the law, by expressly declaring a bargain *with either plaintiff or defendant,* as the object of the restriction. The Roman law makes no distinction between the advocate of the plaintiff and that of the defendant. *Nullum neque pactum neque contractum de lite aut mercede.* Neither is there any in the case of the *honoraire* of the *avocat* of either party in France. Neither do the English. *Wood* indeed says: no attorney can *carry* a cause, on no purchase, no pay. *Inst.* 413. But he is only a commentator, and the text of the Roman law, which is in this respect his guide, extends indiscriminately to the advocates of either party.

WE admit that, as the act of our legislature speaks of attorneys of the courts of the territory, the suits spoken of in it, must be understood to be those only which are prosecuted in our courts, and the present case, being that of a suit in the supreme court of the United States, is not thereby affected ; but we are under an impression, that the act is not introductory of a new principle.　The contract, if it exists, received the defendant's assent here, and the payment was to be effected here : it follows it must be tested by our principles of jurisprudence.　These, in our opinion, disallow all contracts between counsel and suitor ; they protect the ignorance of the latter against the cupidity of the former, in the same manner as the confidence of youth against the cunning of age ; the weak mind of a sick man against the impositions of his physician, 1800, *ch*. 9, or the distressed situation of a needy one against the extortions of the money lender. *Civil Code*, 408. *Caizergues* vs. *Dujarreau*. 1 *Martin*, 7.

*Constantini*, a celebrated Italian lawyer, in his *Lettere Critiche*, speaking of *ladrones occultos*, secret thieves, says, " they (physicians) steal also, " when, pretending that they will receive no pay, " unless they cure the patient, they make him pay " the hundred fold." *Roban tambien con fingir de no querer gratificacion alguna , si no cura el enfer-*

FALL   1812. *mo, haciendo que les paguen entre tanto sus se-*
I. District.
*cretos, a ciento por uno.* *

LIVINGSTON    BETWEEN client and suitor, special bargains
*vs.*
CORNELL.  are, generally, what the French call *conventions
leonines,* lion's bargains.   One party is able to as-
certain with considerable accuracy, the value of the
risk against which he insures : the other is com-
pletely in the dark.   If the court were to permit
such agreements, an interested lawyer would sel-
dom consent to any other; for none could be so
advantageous *to him.*   Seldom would the suitor
obtain disinterested advice.   Risks, which the
party consulted would expect to insure against,
would ever be magnified.   In the inferior courts,
the counsel would decline to avail himself of vic-
torious means of defence, in hopes that the alarms
of the client, excited or increased by a failure in
the first instance, might prepare his distressed
mind to accept relief, at the expence of a conside-
rable part of his fortune, by a bargain on *no pur-
chase no pay.   Cliens omnia daret patrono, propter
metum litis, ut infirmus propter timorem mortis,
medico.   Ad leg. 6. Cod. de postulando.*

THE plaintiff has contended that the sum
claimed by him, is *no part of the thing in dispute,*
but a specific sum, measured and ascertained by

---

* We use a Spanish translation, for want of the ori-
ginal. 10 *Cartas Criticas,* 311.

the amount of the judgment. This appears to us
a mere play upon words. Judgments rendered
in a circuit court of the United States, are exam-
ined in the supreme court, when *the matter in*
*dispute*, exceeds the sum or value of $2000. 1
*Laws U. S.* 62. Now the judgment in this case
was carried up, because the *matter in dispute*, was
a sum of $15,000. The plaintiff claims ten per
cent. on, or the *tenth part* of, that sum. Surely
this is claiming part of the *matter* or thing, *in
dispute*.

FROM a full examination and comparison of the
principles of jurisprudence, and the provisions
made by the express laws, which we have cited,
it appears to us :

1. THAT, by the Roman law, advocates were
not allowed ordinarily to resort to a suit, in order
to compel ungrateful clients to do them justice,
although in certain cases the court might yield
their aid—that no contract was permitted between
them ; and those by which the advocate stipulated
for a part of the thing in dispute, as his reward,
were highly condemned and reprobated.

2. THAT in *France*, from whence are drawn
the original laws of this country, at the period
when it was ceded to Spain, *avocats* were not

FALL 1812.
I. District.

LIVINGSTON
*vs.*
CORNELL.

permitted to sue, and the other principles of the civil law were in their full vigor.

3. THE plaintiff has not shewn that, whilst this country was under the dominion of *Spain*, any Spanish law was introduced, altering the jurisprudence of the colony in this respect.

4. THAT the common law of *England*, which is imagined to be the ground work of most of, if not all, the United States, except this, the Roman jurisprudence, as to the reward of counsel, is observed with unabated strictness—counsel never being allowed to sue their clients. Attornies, as the *procureurs* in France, being allowed a remuneration, according to a tariff established by law; and for the payment of the fees thus allowed, they are indulged with the benefit of the courts of the country.

5. THAT in most of these states, the same individuals, acting as counsellors and attornies, are permitted to sue for their legal fees, when a statute fixes them; and when there is no statute provision for the value of their services. We are unable to say that, in any case, a suit was brought with success on a special contract.

WE conclude:

I. THAT, in this state, the usage which prevails, having excluded the distinction between counsel and attorney, and the services which are rendered in either of those capacities not being distinguishable, it is much more consonant to justice that the ability to sue, of the attorneys, should be extended to every case of professional services, than to extend the disability of the counsel. That, therefore, a gentleman, acting as an attorney and counsellor at law, may sue for the reward of his services, and claim it, as there is no tariff, according to their real value.

II. THAT this real value is not to be fixed by any previous contract or agreement, but may be established by the allowance of the suitor, after the services are performed—as in the case of *Ellery* vs. *Amelung's syndics, ante,* 244.

III. BUT that it cannot, in any case, rest on an agreement depending on the issue of the suit: much less can a contract, on *no purchase no pay,* be the ground of an action.

IV. THAT those principles extend to contracts made and to be completed here, although the suit be depending elsewhere. In suits depending in the courts of the state, the attorney or counsel violating them, incurs, besides the nullity of the contract, the penalties of the statute.

FALL 1812.
I. District.

LIVINGSTON
vs.
CORNELL.

THE present verdict sanctioning a contract between a counsellor and attorney, on an event depending on the issue of a suit, and the reward stipulated for being a part of the object in dispute, is contrary to law and ought to be set aside.

NEW TRIAL GRANTED.

*Mazureau* and *Depeyster*, for the plaintiff.
*Ellery*, for the defendant.